FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 2 8 2022

TAMMY H. DOWNS, CLERK
By: _Kttaip_
DEP CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| **DARRELL T. BYERS and JUDY BYERS,** | Civil Action No.: 4:22-CV-1272-KGB |
| *Plaintiffs,* | |
| v. | |
| **EXACTECH, INC., and** | This case assigned to District Judge Baker |
| **EXACTECH, US, INC.,** | and to Magistrate Judge Ray |
| *Defendants.* | |

## COMPLAINT & DEMAND FOR JURY TRIAL

NOW COMES Plaintiff DARRELL T. BYERS ("Plaintiff") and JUDY BYERS (hereinafter collectively as "Plaintiffs"), by and through the undersigned attorneys, and bring this action against EXACTECH, INC. ("EXACTECH") and EXACTECH US, INC. ("EXACTECH US") and allege as follows:

### INTRODUCTION

1.    Plaintiff brings this action for personal injuries and damages suffered as a direct and proximate result of the use of an unreasonably dangerous device, the Exactech Connexion GXL liner (hereinafter "the Product").

2.    The Product was used in Plaintiff DARRELL T. BYERS's right total hip arthroplasty to treat his osteoarthropathy of the right hip joint.

3.    At all times relevant to this action, Defendants were responsible for the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the

1

Product to be used by healthcare providers in patients throughout the United States, including New York.

    4.    All of Plaintiff DARRELL T. BYERS's claims for damages relate to Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the Product.

    5.    The Product reached Plaintiff DARRELL T. BYERS, by and through his physicians, and medical facilities without substantial change in condition from the time it left Defendants' possession.

    6.    Plaintiff DARRELL T. BYERS, his physicians, and his medical providers used the Product in the manner in which it was intended.

## PARTIES

    7.    Plaintiff, DARRELL T. BYERS, currently resides in Mammoth Spring, AR.

    8.    Plaintiff, JUDY BYERS, currently resides in Mammoth Spring, AR and at all times material hereto is the lawful spouse of DARRELL T. BYERS.

    9.    EXACTECH, INC. is a Delaware corporation with a principal place of business at 2320 NW 66th CT Gainesville, Florida 32653. Exactech's stated business purpose is to develop, manufacture, market, distribute, and sell orthopedic implant devices, related surgical instrumentation and biologic services to hospitals and physicians in the United States and internationally and to introduce its products, including the Product, into interstate commerce, either directly or indirectly through third parties or related entities.

    10.    Defendant EXACTECH US, INC., a wholly owned subsidiary of Defendant EXACTECH, INC., is a Florida corporation with its principal place of business located at 2320 NW 66th Court, Gainesville, Florida 32653.

    11.    According to public filings, Defendant EXACTECH US, INC. conducts

2

Defendants' U.S. sales and distribution activities.

12.     EXACTECH US, INC. is engaged in the business of designing, developing, testing, assembling, selecting, manufacturing, packaging, labeling, preparing, distributing, marketing, supplying, warranting, selling, and introducing Defendants' products, including the products at issue here, into commerce throughout the United States.

13.     Upon information and belief, Defendant EXACTECH, INC.'s products were distributed by Defendant EXACTECH US, INC. throughout the United States, including in New York, New York where Plaintiff received his implant.

14.     At all times relevant to this action, Defendant EXACTECH US, INC. tested, studied, researched, designed, formulated, manufactured, inspected, labeled, packaged, stored, promoted, advertised, marketed, distributed, and/or sold EXACTECH, INC.'s products in interstate commerce and generated substantial revenue as a result.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and because there is complete diversity of citizenship between Plaintiff and all Defendants.

16.     The court has personal jurisdiction over Defendants because at all relevant times they have engaged in substantial business activities in the State of Arkansas. At all relevant times Defendants transacted, solicited, and conducted business in Arkansas through their employees, agents, and/or sales representatives, and derived substantial revenue from such business in Arkansas.

17.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim, including Plaintiff's

primary surgery and revision surgery occurred or will occur in this judicial district and division.

## FACTS

18.     Plaintiff DARRELL T. BYERS underwent a total right hip arthroplasty in approximately 2018 and again in 2020, in Little Rock, Arkansas. Specifically, as mentioned above, the issue in this matter is with the accelerated wear of the polyethylene, cross linked Exactech Connexion GXL liners (hereinafter "the Product"), which led to the Plaintiff DARRELL T. BYERS's early, debilitating osteolysis.

19.     The Product was used for its intended purpose because Plaintiff DARRELL T. BYERS suffered from osteoarthropathy of his right hip.

20.     After Plaintiff DARRELL T. BYERS received a total right hip arthroplasty, with the Product, Plaintiff DARRELL T. BYERS suffered accelerated osteolysis and experienced severe pain and discomfort in his hip.

21.     Due to the failure of the Product, Plaintiff DARRELL T. BYERS suffered injuries so painful that a total right hip arthroplasty revision was recommended by his medical professionals.

22.     Due to accelerated wear and/or loosening of the Product, Plaintiff is scheduling a right revision surgery to be performed in Little Rock, Arkansas.

23.     Plaintiff DARRELL T. BYERS continues to experience severe pain and discomfort in his right hip.

24.     Defendants designed, manufactured, distributed, packaged, and placed into the stream of commerce the Product and its components, during the relevant time period.

25.     Defendants applied for U.S. Food and Drug Administration ("FDA") clearance to market the Product under Section 510(k) of the Medical Device Amendment.

26.     Section 510(k) allows for the marketing of medical devices, so long as the medical

4

device or material is deemed substantially equivalent to other legally marketed predicate devices or materials without predicate devices. There is no formal review for the safety or efficacy of the device. It is imperative to note that a 510(k) clearance is not the same as FDA approval.

27.    Defendants obtained clearance by a 510(k) application on March 15, 2007 after a 23-day review process.

28.    Based on the 510(k)-clearance procedure, Defendants bypassed the requirement to have the Product independently evaluated by the FDA or its experts.

29.    The product was indicated for use for adults, undergoing a primary total hip arthroplasty due to osteoarthritis, rheumatoid arthritis, osteonecrosis, post-traumatic degenerative problems of the hip, and for treatment of proximal femoral fractures where prosthetic replacement is determined by the surgeon as the preferred treatment.

30.    Defendants used irradiated ultra-high-molecular-weight polyethylene ("UHMWPE") in the Product.

31.    UHMWPE has been used clinically in joint implants due to its low friction, high wear resistance, good toughness, high impact strength, high resistance to corrosive chemicals, excellent biocompatibility, and low cost.

32.    However, there is an unacceptably low stability of oxidation of polyethylene. Consequently, two stabilization strategies were developed and adopted in order to minimize post-irradiation oxidative ageing: one involved post-irradiation melting of the polyethylene ("remelting"), while the other included exposure at a temperature below complete melting of the crystallites ("annealing"). The rationale was to eliminate or minimize free radicals created as part of irradiation of UHMWPE. Free radicals are highly reactive to oxygen and exposure of free radicals to oxygen results in oxidation that embrittles the UHMWPE increasing the risk of

accelerated wear.

33.     The Product was not properly heat treated, leading to the accelerated wear of the Product, the onset of Plaintiff DARRELL T. BYERS's osteolysis, and the need for the Plaintiff DARRELL T. BYERS's revision surgery.

34.     Defendants performed, completed, and were solely and ultimately responsible for the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, packaging, and/or distribution of the Product.

35.     Defendants had in their possession, during the relevant time period, testing, research and studies regarding loosening and failure of the Product.

36.     Defendants had in their possession, during the relevant time period, information regarding the rate of loosening and failure of the Product.

37.     The Product was recalled from the market in 2021 because Defendants claim there was a "risk of edge-loading and premature prosthesis wear."

38.     In August 2022, Exactech expanded its recall on polyethylene hip liners finding that since 2004, its polyethylene hip liners were packed in non-conforming bags (as were its knee and ankle products). Exactech's August 11, 2022 letter to healthcare providers states in relevant part:

> Exactech has identified an additional risk factor for premature wear that was not known at the time of the prior DHCP communication. GXL inserts manufactured since 2004 were packaged in out of specification (referred to hereafter as "non-conforming") vacuum bags that are oxygen resistant but do not contain a secondary oxygen barrier layer known as ethylene vinyl alcohol (EVOH), which further augments oxygen resistance. **The use of these non-conforming bags may enable increased oxygen diffusion to the polyethylene insert resulting in increased oxidation of the material relative to inserts packaged with the specified additional oxygen barrier layer. Over time, oxidation can severely degrade the mechanical properties of the Connexion GXL polyethylene, which, in conjunction with other surgical factors, can lead to both accelerated wear and**

**bone loss, and/or component fatigue cracking/fracture, all leading to corrective revision surgery.**

39.     Prior to the Product being implanted in Plaintiff, Exactech had notice and knowledge (based on product complaint date) that the Product was susceptible to accelerated wear and bone loss, and/or component fatigue cracking/fracturing, and loosening, and that revision surgeries would be necessary to remove the Product.

40.     In fact, as the number of reported failures continued to increase, Exactech began developing another product manufactured with highly crosslinked vitamin E-stabilized polyethylene.  In March 2018, Exactech received FDA clearance for its vitamin E acetabular polyethylene liner.  The "XLE Liner," has a lower wear rate than the Product, and is heat treated and blended with vitamin E. The XLE Liner is manufactured differently and subjected to a different, more thorough treatment than the Product.

## TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

41.     Plaintiff asserts all applicable state statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including the discovery rule and/or fraudulent concealment.

42.     Plaintiff files this lawsuit within the applicable statute of limitations period of first suspecting or having reason to suspect any wrongdoing, and within the applicable limitations period of first discovering the cause of his injuries and the wrongful conduct that caused such injuries—after Defendants fraudulently concealed their wrongful conduct.  Plaintiff could not by exercise of reasonable diligence have discovered any wrongdoing, nor could have discovered the causes of Plaintiff's injuries at an earlier time because some injuries occurred without initial perceptible trauma or harm, and when Plaintiff's injuries were discovered, their causes were not immediately known.  Consequently, the discovery rule should be applied to toll the running of the

statute of limitations until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that Plaintiff may have a basis for an actionable claim.

43.     The discovery rule should be applied to toll the running of the statute of limitations until the Plaintiff discovered or reasonably should have discovered Plaintiff's injury and the causal connection between the injury and Defendants' conduct.

44.     Defendants are estopped from asserting a statute of limitations defense because Defendants fraudulently concealed from Plaintiff the truth, quality, and nature of Plaintiff's injuries and the connection between the injuries and Defendants' tortious conduct.  Defendants, through their affirmative misrepresentations, concealment, and omissions, actively concealed from Plaintiff the risk their abusers continued to pose.

45.     Defendants were under a duty to disclose the true character, quality, and nature of the risks associated with their Product and because Defendants knew that this information was not available to Plaintiff.  In addition, Defendants are estopped from relying on any statute of limitation because of their intentional concealment of these facts.

46.     Plaintiff had no knowledge that Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior.

47.     Under the appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

**COUNT I**
**NEGLIGENCE**
(Against all Defendants)

48.     Plaintiff DARRELL T. BYERS repeats, reiterates, incorporates, and realleges paragraphs 1-47 in this Complaint with the same force and effect as if fully set forth herein.

49. Defendants had a duty to Plaintiff DARRELL T. BYERS to exercise reasonable care in the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, packaging, and/or distribution of the Product, including the duty to take all reasonable steps necessary to manufacture and sell a Product that was not defective and unreasonably dangerous to consumers and users of the Product.

50. Defendants failed to exercise reasonable care in the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, packaging, and/or distribution of the Product because Defendants knew, or should have known, that its Product would loosen and fail.

51. Defendants knew, or should have known, that consumers, such as the Plaintiff DARRELL T. BYERS, and/or his healthcare providers would foreseeably suffer injuries (osteolysis), as a result of Defendants' failure to exercise ordinary care, for the following reasons:

        a. The design of the Product posed a greater likelihood for failure and was more dangerous than other available devices indicated for the same conditions and uses;

        b. The Product was never approved by the FDA as being safe and effective for its intended uses; and

52. As a foreseeable, direct, and proximate consequence of Defendants' negligence, Plaintiff DARRELL T. BYERS sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against Defendants and requests compensatory damages for past, present, and future pain and suffering, medical costs,

and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT II
## STRICT PRODUCTS LIABILITY: DESIGN DEFECT
(Against all Defendants)

53.     Plaintiff DARRELL T. BYERS repeats, reiterates, incorporates, and realleges paragraphs 1-47 contained in this Complaint with the same force and effect as if fully set forth herein.

54.     Defendants designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, packaged, and/or distributed the Product that was surgically implanted in Plaintiff DARRELL T. BYERS.

55.     The Product was expected to, and did, reach the intended consumers (including plaintiff), handlers, and persons encountering the Product with no substantial change in the condition in which the Product was designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, packaged, and/or distributed by Defendants.

56.     The Product was marketed by Defendants for use in hip replacement surgeries for consumers, and Plaintiff DARRELL T. BYERS became a consumer in approximately 2018 and 2020 and relied upon the safety of the Product.

57.     Even though UHMWPE is commonly used when performing hip revision surgery, the Product was inadequately and inappropriately designed as Defendants failed to properly address free radicals created during the cross-linking process of the UHMWPE and/or failed to prevent oxidation during transport, storage, and clinical uses.

10

58.    The Product was inadequately and inappropriately tested due to Defendants never seeking or receiving FDA approval or after receipt of numerous complaints.

59.    The Product was designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, packaged, and/or distributed and sold in a defective condition, for use by Plaintiff DARRELL T. BYERS and Plaintiff DARRELL T. BYERS's physicians and/or healthcare providers, and all other consumers of the Product, making the Product unreasonably dangerous. In particular, the Product was defectively designed in that irradiation of UHMWPE created free radicals and industry standards provide for heat treatment to address same and/or packaging to prevent oxygen exposure during storage, and the design of the product did not require proper heat treatment and packaging, which led to accelerated wear of the Product, the Plaintiff DARRELL T. BYERS's contraction of osteolysis, and the need for the Plaintiff DARRELL T. BYERS's revision surgery. The Product caused serious and permanent injuries to the Plaintiff.

60.    While UHMWPE is commonly used when performing a hip revision surgery, Defendants' Product, as designed, researched, manufactured, tested, advertised, promoted, marketed, sold, packaged, and distributed by Defendants was defective in design and formulation.

61.    At all times relevant to this action, Defendants knew and had reason to know that the Product was inherently defective and unreasonably dangerous as designed, formulated, packaged, and manufactured by Defendants, and when used in the form manufactured and distributed by Defendants, and in the manner instructed by Defendants to be used and implanted in the Plaintiff DARRELL T. BYERS and other consumers.

62.    Defendants knew and intended that the Product would be purchased from Defendants by hospitals and physicians, and would be used by such purchasers without any

11

detailed inspection for defects, and which purchasers would rely upon the representations made by Defendants on the product label, in other promotional sales and materials otherwise.

63.    Plaintiff DARRELL T. BYERS and Plaintiff DARRELL T. BYERS's physicians and/or healthcare providers used the Product for the purpose intended by Defendants, and in a manner normally intended to be used.

64.    Plaintiff DARRELL T. BYERS and Plaintiff DARRELL T. BYERS's physicians could not have discovered any defect in the Product or accompanying sales and promotional materials through the exercise of due care.

65.    At all times material to these claims, there was a safer, alternative design that was both technologically and economically feasible, which would have prevented or substantially reduced the risk of Plaintiff DARRELL T. BYERS's injuries without substantially impairing the device's utility.

66.    As a direct and proximate consequence of Defendants' design defects, Plaintiff DARRELL T. BYERS sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against the Defendants and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT III
## STRICT PRODUCTS LIABILITY: MANUFACTURING DEFECT
(Against all Defendants)

67.    Plaintiff DARRELL T. BYERS repeats, reiterates, incorporates and realleges paragraphs 1-47 contained in this Complaint with the same force and effect as if fully set forth herein.

68.    The Product implanted in Plaintiff DARRELL T. BYERS had an impurity, imperfection, and/or another product defect permitted to be created, contained, or placed within the product in the manufacturing process such that it would experience accelerated, excessive polyethylene wear, rendering it unreasonably dangerous.

69.    The impurity, imperfection, and/or other product defect was a deviation from design and quality manufacturing standards.

70.    As a result of the impurity, imperfection, and/or other product defect, the Product implanted in Plaintiff DARRELL T. BYERS was in a defective condition, such that it would experience excessive polyethylene wear, and it was unreasonably dangerous when it left the Defendants' control.

71.    Defendants knew or should have known that the Product implanted in Plaintiff DARRELL T. BYERS would not be inspected for impurities, imperfections and/or other product defects prior to its implantation into Plaintiff DARRELL T. BYERS, and that if it were inspected for such impurities, imperfections and/or other product defects by Plaintiff DARRELL T. BYERS or his healthcare providers, the same could not be discerned or perceived.

72.    The Product implanted in Plaintiff DARRELL T. BYERS was defective in manufacture as the packaging required by the design specifications was not utilized and the deviation from the design specification was a substantial factor in the proximate cause of Plaintiff's

13

hip implant failure that resulted in damages to the Plaintiff.

73.    The product implanted in Plaintiff DARRELL T. BYERS was used in the manner intended.

74.    As a direct and proximate consequence of Defendants' manufacturing defects, Plaintiff DARRELL T. BYERS sustained serious personal injuries and related losses including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against the Defendants, and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

**COUNT IV**
**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**
(Against all Defendants)

75.    Plaintiff DARRELL T. BYERS repeats, reiterates, incorporates, and realleges paragraphs 1-47 contained in this Complaint with the same force and effect as if fully set forth herein.

76.    Defendants designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, packaged, and/or distributed the Product.

77.    Defendants were expected to, and did, reach the intended consumers, handlers, and persons encountering the Product with no substantial change in the condition in which the Product

was designed, researched, developed, manufactured, tested, labeled, advertised, promoted, marketed, sold, supplied, packaged, and/or distributed by Defendants.

78.     Use of the Product, as designed, researched, developed, manufactured, tested, advertised, promoted, marketed, sold, labeled, packaged, and distributed by Defendants, involved a substantial danger to Plaintiff DARRELL T. BYERS that would not be readily recognized by the ordinary user of the Product.

79.     Plaintiff DARRELL T. BYERS used the Product as intended or in a reasonably foreseeable manner.

80.     Defendants failed to provide adequate warnings to avoid the substantial danger of accelerated wear and loosening.

81.     Specifically, since the 1990s (the Product was cleared for sale in 2007) manufacturers of hip implants developed thermal processes to address free radicals created during irradiation to prevent and/or minimize oxidative risk to the UHMWPE liners. Defendants failed to adequately heat treat and/or properly package the UHMWPE liner that was implanted in Plaintiff and further failed to warn of the risks associated with oxidation and accelerated wear and loosening due to the Product's free radicals.

82.     Additionally, the Defendants received 510(k) clearance due to their contention that the Product was substantially equivalent to other legally marketed devices, even though the Product was not properly heat treated as was standard in the industry.

83.     The Product never received FDA approval and has since been recalled as of June 2021.

84.     As a proximate result of Defendants' acts and omissions and the Plaintiff DARRELL T. BYERS's use of Defendants' defective Product, Plaintiff DARRELL T. BYERS

suffered serious physical injuries and incurred substantial medical costs and expenses as set forth in this Complaint, including, but not limited to, mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, medical bills and other expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT V
## BREACH OF EXPRESS WARRANTY
(All Defendants)

85.    Plaintiff DARRELL T. BYERS repeats, reiterates, and realleges paragraphs 1-47 with the same force and effect as if fully set forth herein.

86.    Defendants, through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisements, expressly warranted that their Product was safe and effective and fit for use by consumers, was of merchantable quality, did not create the risk of or produce dangerous side effects, including, but not limited to, severe pain and surgery, and was adequately tested and fit for its intended use.

87.    At the time of making such express warranties, Defendants knew and/or should have known that their Product did not conform to the express warranties and representations. In fact, their Product exacerbated the risk of severe pain and revision surgery, and Defendants had full knowledge of this and did not accurately or adequately warn the Plaintiff DARRELL T. BYERS, his physicians and/or other healthcare providers.

16

88.    The Product manufactured and sold by Defendants did not conform to these representations because it caused serious injury, including severe pain and surgery, to consumers such as the Plaintiff DARRELL T. BYERS.

89.    Defendants breached their express warranties because the Product was and is defective for its intended purpose.

90.    Plaintiff DARRELL T. BYERS, through his physicians and/or other healthcare providers, did rely on Defendants' express warranties regarding the safety and efficacy of their Product in purchasing and using the Product.

91.    Members of the medical community, including physicians and other healthcare professionals, relied upon Defendants' representations and express warranties in connection with the use recommendation, description, and use of Defendants' Product.

92.    As a foreseeable, direct, and proximate result of the breach of the express warranties, the Plaintiff DARRELL T. BYERS suffered severe and permanent personal injuries, harm, and economic loss.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against Defendants and request compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
(All Defendants)

93.    Plaintiff DARRELL T. BYERS repeats, reiterates, and realleges the allegations in paragraphs 1-47 in this Complaint with the same force and effect as if fully set forth herein.

94.     At all times relevant to this action, Defendants manufactured, portrayed, distributed, recommended, merchandised, advertised, promoted, and/or sold their Product for hip replacement.

95.     Defendants knew of the intended use of their Product at the time Defendants marketed, sold, and distributed the Product for use by the Plaintiff DARRELL T. BYERS's physicians and healthcare providers, and impliedly warranted the Product to be of merchantable quality and safe and fit for its intended use.

96.     Defendants impliedly represented and warranted to the medical community, the regulatory agencies, and consumers, including Plaintiff DARRELL T. BYERS, his physicians, and his healthcare providers, that Product was safe and of merchantable quality and fit for the ordinary purpose for which the Product was intended and marketed to be used.

97.     Defendants' representations and implied warranties were false, misleading, and inaccurate because the Product was defective, and not of merchantable quality.

98.     At the time Defendants' Product was promoted, marketed, distributed, and/or sold by Defendants, Defendants knew of the use for which it was intended and impliedly warranted the Product to be of merchantable quality and safe and fit for such use.

99.     Plaintiff DARRELL T. BYERS, his physicians and healthcare providers, and members of the medical community reasonably relied on the superior skill and judgment of Defendants, as manufacturer, developer, distributor, and seller of the Product, as to whether it was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Product was manufactured and sold.

100.    Contrary to Defendants' implied warranties, its Product as used by Plaintiff

18

DARRELL T. BYERS, was not of merchantable quality and was not safe or fit for its intended use because the Product was unreasonably dangerous as described herein.

101.    Defendants breached their implied warranty because the Product was not safely fit for its intended use and purpose.

102.    Defendants placed the Product into the stream of commerce in a defective, unsafe, and inherently dangerous condition, and the Product was expected to and did reach the Plaintiff DARRELL T. BYERS without substantial change in the condition in which it was manufactured and sold.

103.    As a foreseeable, direct, and proximate result of Defendants' acts and omissions and Plaintiff DARRELL T. BYERS's use of Defendants' defective Product, Plaintiff DARRELL T. BYERS suffered serious physical injuries and incurred substantial medical costs and expenses to treat and care for his injuries described herein.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against the Defendants and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

**COUNT VII**
**FRAUDULENT MISREPRESENTATION**
(All Defendants)

104.    Plaintiff DARRELL T. BYERS repeats, reiterates, and realleges the allegations in paragraphs 1-47 in this Complaint with the same force and effect as if fully set forth herein.

105.    Defendants were under a duty to accurately and truthfully disclose to the Plaintiff

19

DARRELL T. BYERS, his physicians, and healthcare providers, that the product had not been adequately tested and had not been found to be safe and effective for the treatment of patients, like Plaintiff DARRELL T. BYERS in this matter, requiring hip replacement.

106.    Defendants, by and through agents and employees as will be added following discovery, intentionally, willfully, and knowingly, fraudulently misrepresented to the medical community, the FDA, and consumers, including the Plaintiff DARRELL T. BYERS and his healthcare providers, that the Product had been adequately tested in clinical trials and was found to be safe and effective.

107.    Defendants knew or should have known at the time it made its fraudulent misrepresentations, that its misrepresentations were false and fraudulent regarding the dangers and risks associated with use of its Product. Defendants made their fraudulent misrepresentations intentionally, willfully, wantonly, and/or with reckless disregarded and depraved indifference for the safety and well-being of the users of their Product, including the Plaintiff DARRELL T. BYERS.

108.    Defendants' fraudulent misrepresentations were made with the intent of defrauding and deceiving the medical community, the Plaintiff DARRELL T. BYERS, and the public, and also inducing the medical community, Plaintiff DARRELL T. BYERS, and the public, to recommend, prescribe, insert and purchase Defendants' Product.

109.    Defendants had sole access to material facts concerning the defective nature of the Product and its propensity to cause serious and dangerous injuries and damages to persons who used the Product.

110.    The intentional concealment and omissions of material fact concerning the safety of the Product was undertaken purposefully, willfully, wantonly, fraudulently with intent to

mislead, and/or with reckless disregard for the health and safety of the Plaintiff DARRELL T. BYERS and to induce Plaintiff DARRELL T. BYERS's physicians and healthcare providers to purchase, prescribe, and/or implant the Product.

111. Defendants purposefully, willfully, wantonly, fraudulently with intent to mislead, and/or with reckless disregard misled Plaintiff DARRELL T. BYERS into reliance upon Defendants' fraudulent misrepresentations that the Product was safe and effective for use.

112. At the time Defendants made these misrepresentations, during the relevant time period, including Defendants through its various officers, directors, agents, representatives, and employees, and at the times the plaintiff was implanted with Defendants' Product, Plaintiff DARRELL T. BYERS and his healthcare advisers were unaware of Defendants' falsehoods, and reasonably relied on the Defendants' misrepresentations.

113. Defendants knew and had reason to know that the Product was at great risk of causing serious personal injury to users of the Product, and that the Product was inherently dangerous in a manner that exceeded the inaccurate and inadequate warnings given by Defendants.

114. In reliance upon Defendants' false and fraudulent misrepresentations, through his physicians and healthcare providers, the Plaintiff DARRELL T. BYERS was induced to, and did, reasonably rely upon Defendants' misrepresentations regarding the safety and efficacy of the Product in 2013, thereby sustaining severe and permanent personal injuries and damages. Defendants knew and had reason to know that Plaintiff DARRELL T. BYERS, his physicians and his healthcare providers, in using the Product, did not have the ability to determine the true facts intentionally concealed by Defendants, and would not have used the Product if the true facts regarding the Product had been known by Plaintiff DARRELL T. BYERS, his physicians, and his healthcare providers.

115.    As a result of Defendants' research and testing, or lack thereof, Defendants willfully, wrongfully, and intentionally distributed false information including, but not limited to, assuring the Plaintiff DARRELL T. BYERS, the public, and Plaintiff DARRELL T. BYERS's healthcare providers and physicians, that the Product was safe for use. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted, concealed, and suppressed from the medical community, Plaintiff DARRELL T. BYERS and other consumers the true results of Defendants' studies and research, which revealed the true risks of serious harm associated with the use of the Product.

116.    Defendants had a duty when disseminating information to the public to provide truthful information, and a parallel duty not to deceive the public, the Plaintiff DARRELL T. BYERS, his healthcare providers and physicians, and the FDA.

117.    The information distributed by Defendants to the public, including the Plaintiff DARRELL T. BYERS, the medical community, and the FDA, included, but was not limited to, reports, press releases, advertising campaigns, print advertisements, commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth regarding the dangers of the use of the Product.

118.    Defendants intentionally, falsely represented the risks in using the Product to the public at large, and the Plaintiff DARRELL T. BYERS and his healthcare providers in particular, for the purpose of influencing the sales of a product known by Defendants to be dangerous and defective.

119.    Defendants' wrongful conduct constitutes fraud and deceit, and was committed and perpetrated willfully, wantonly, and purposefully.

120.    As a foreseeable, direct, and proximate result of Defendants' described acts and

omissions, Plaintiff DARRELL T. BYERS was caused to suffer the injuries described in this Complaint.

121.    As a direct and proximate consequence of Defendants' fraudulent misrepresentations, Plaintiff DARRELL T. BYERS sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against the Defendants and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT VIII
## FRAUDULENT CONCEALMENT
(All Defendants)

122.    Plaintiff DARRELL T. BYERS repeats, reiterates, and realleges the allegations in paragraphs 1-47 in this Complaint with the same force and effect as if fully set forth herein.

123.    At all times during the course of dealing between Defendants and Plaintiff DARRELL T. BYERS, and/or, Plaintiff DARRELL T. BYERS's healthcare providers, and/or the FDA, Defendants misrepresented material facts about the safety of the Product for its intended use.

124.    Defendants failed to mention the likelihood of needing subsequent surgery, or the likelihood of accelerated wear and loosening.

23

125.    Defendants were under a duty to disclose to Plaintiff DARRELL T. BYERS, and Plaintiff DARRELL T. BYERS's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of the Product.

126.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, including surgery, and hence, cause damage to persons who used the Product.

127.    Defendants' concealment and omissions of material facts concerning, inter alia, the safety of the Product was made purposefully, willfully, wantonly, and/or recklessly, to mislead and induce Plaintiff DARRELL T. BYERS, and Plaintiff DARRELL T. BYERS's physicians, hospitals and healthcare providers into reliance, continued use of the Product, and actions thereon, and to cause them to purchase, prescribe and/or dispense the device and/or use the product. Defendants' misrepresentations were made with knowledge that their statements were false.

128.    Defendants knew that Plaintiff DARRELL T. BYERS, and Plaintiff DARRELL T. BYERS's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the Product, as set forth herein.

129.    Plaintiff DARRELL T. BYERS and Plaintiff DARRELL T. BYERS's physicians, prior to the date of Plaintiff DARRELL T. BYERS's total hip replacement surgery, relied on the Defendants' misrepresentations about the Product to use the Product in treating Plaintiff DARRELL T. BYERS.

130.    Defendants' misrepresentations induced the use of their product to Plaintiff DARRELL T. BYERS and Plaintiff DARRELL T. BYERS's physicians.

131.    Plaintiff DARRELL T. BYERS, as well as Plaintiff DARRELL T. BYERS's

doctors, healthcare providers, and/or hospitals reasonably relied on facts which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

132.    As a result of the foregoing acts and omissions and as a direct and proximate consequence of Defendants' fraudulent misrepresentations, Plaintiff DARRELL T. BYERS was caused to suffer and/or was at a greatly increased risk of serious and dangerous side effects, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life.

133.    **WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against the Defendants and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT IX
## NEGLIGENT MISREPRESENTATION
(All Defendants)

134.    Plaintiff DARRELL T. BYERS repeats, reiterates, and realleges the allegations in paragraphs 1-47 in this Complaint with the same force and effect as if fully set forth herein.

135.    Defendants had a duty to accurately and truthfully represent to the medical community, the FDA, and U.S. consumers, including Plaintiff DARRELL T. BYERS, the truth regarding Defendants' claims that the Product had been tested, and found to be safe and effective for its stated purposes. The misrepresentations made by Defendants, in fact, were false and Defendants were careless or negligent in ascertaining the truth of the representations at the time

Defendants made the misrepresentations.

136.    Defendants represented and marketed the Product as being safe and effective.

137.    After Defendants became aware of the risks of the Product, Defendants failed to communicate to the Plaintiff DARRELL T. BYERS and other members of the general public, that the Product had an increased risk of severe pain and surgery along with a likelihood for accelerated wear and loosening.

138.    Defendants failed to exercise ordinary care in making representations concerning its Product and its manufacture, sale, testing, quality assurance, quality control, and distribution in the stream of commerce. Defendants negligently and/or carelessly misrepresented and intentionally concealed the truth regarding the high risk of the Product's unreasonable, dangerous and adverse side effects associated with the implantation, use of the Product.

139.    Defendants breached its duty in representing to the Plaintiff DARRELL T. BYERS, his physicians and healthcare providers, and the medical community that the Product did not carry the risk of injuries such as those suffered by Plaintiff DARRELL T. BYERS and other similarly situated patients.

140.    Defendants failed to warn Plaintiff DARRELL T. BYERS and other consumers, of the defective condition of the Product, as manufactured and/or supplied by Defendants.

141.    Defendants negligently misrepresented material facts about the Product, inter alia its safety and testing, in that it made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations.

142.    The above misrepresentations were made to Plaintiff DARRELL T. BYERS, as

well as the general public.

143.    Plaintiff DARRELL T. BYERS and his healthcare providers and physicians justifiably relied on Defendants' misrepresentations.

144.    Consequently, Plaintiff DARRELL T. BYERS's use of the Product was to his detriment as Defendants' negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses.

145.    As a foreseeable, direct, and proximate result of Defendants' negligent and/or willful, intentional, and knowing misrepresentations as set forth herein, Defendants knew, or had reason to know, that the Product had not been sufficiently tested, that the Product lacked adequate, accurate, and prominent warnings, and the implantation with the Product created a high risk of adverse health effects, and higher than acceptable risks of harm to users, and higher than reported and represented risks of adverse side effects such as those specifically described herein.

146.    As a direct and proximate consequence of Defendants' negligent misrepresentations, the Plaintiff DARRELL T. BYERS sustained serious personal injuries and related losses including mental anguish, physical pain and suffering, diminished capacity for the enjoyment of life, a diminished quality of life, diminished ability to work, medical and related expenses, and other losses and damages.

**WHEREFORE**, Plaintiff DARRELL T. BYERS demands judgment against Defendants, and requests compensatory damages for past, present, and future pain and suffering, medical costs and expenses, lost wages; prejudgment and post-judgment interest as allowed by law, costs of suit and attorneys' fees, as allowed by law, punitive damages, and any and all such other relief as the Court deems just and proper; and further, demands a trial by jury of all issues so triable.

## COUNT X
## LOSS OF CONSORTIUM AND SERVICES

147.    Plaintiff JUDY BYERS hereby incorporate by reference paragraphs 1-47 of this Complaint as if fully set forth herein and further alleges as follows:

148.    At all relevant times, Plaintiff JUDY BYERS was and is the lawfully wedded wife of Plaintiff DARRELL T. BYERS, and as such, was and is entitled to the services, consortium, and society of Plaintiff DARRELL T. BYERS.

149.    As a direct and proximate result of the Defendants' defective Product and Defendants' tortious conduct, JUDY BYERS, was deprived of the services, consortium, and society of Plaintiff DARRELL T. BYERS.

150.    As a direct, proximate, and legal consequence of Defendants' wrongful conduct as described herein, Plaintiff JUDY BYERS has suffered and will continue to suffer the loss of support, companionship, service, love, affection, society, intimate relations, and other elements of consortium all to the detriment of their marital relationship for which JUDY BYERS is entitled to compensatory damages in an amount to be proven at trial.

## COUNT XI
## PUNITIVE DAMAGES
(All Defendants)

151.    Despite their knowledge of the defective Product, Defendants failed to, among other purposeful acts, inform or warn Plaintiff DARRELL T. BYERS or Plaintiff DARRELL T. BYERS's healthcare providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Product from the market.

152.    At all times hereto, Defendants attempted to and did misrepresent facts concerning the safety of the Product.

153.    At all times hereto, Defendants attempted to and did knowingly misrepresent the

safety of the product.

154.    At all times hereto, Defendants attempted to and did recklessly disregard the fact that the Product would fail and cause debilitating injuries necessitating a revision surgery and also recklessly failed to advise the Plaintiff DARRELL T. BYERS, his physicians, and the FDA of the same.

155.    Defendants knew of the Product's defective and unreasonably dangerous nature, but continued to manufacture, produce, assemble, market, distribute, and sell the product to maximize sales and profits at the expense of the health and safety of the public, including the Plaintiff DARRELL T. BYERS, in conscious and/or negligent disregard of the foreseeable harm caused by the device.

156.    As a foreseeable, direct, proximate, and legal result of Defendants' acts and omissions a described herein, Plaintiff DARRELL T. BYERS has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, plaintiff requests trial by jury and that the Court grant him the following relief against Defendants on all counts of the Complaint, including:

(A)    Money damages representing fair, just and reasonable compensation for Plaintiff's common law and statutory claims;

(B)    Lost wages;

(C)    Punitive and/or treble damages pursuant to state law;

(D)    Disgorgement of profits and restitution of all costs;

(E)    Attorneys' fees pursuant to state law;

(F)     Pre-judgement and post-judgement interests as authorized by law on the

judgments which enter on Plaintiff's behalf;

(G)     Cost of suit;

(H)     Delay Damages; and

(I)     Such other relief as is deemed just and proper.

**WHEREFORE**, Plaintiffs DARRELL T. BYERS and JUDY BYERS demand judgement

against Defendants for compensatory damages, punitive damages and costs of suit as provided by

law.

A TRIAL BY JURY IS RESPECTFULLY DEMANDED.

Dated: December 28, 2022

N. Kirkland Pope
GA Bar No. 584255
Courtney L. Mohammadi
GA Bar No. 566460
**POPE MCGLAMRY, P.C.**
3391 Peachtree Road, NE
Atlanta, GA 30326
Phone: 404-523-7706
Fax: 404-524-1648
Email: efile@pmkm.com
coutneymohammadi@pmkm.com

Rayna E. Kessler, Esq. (*pro hac vice to be filed*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, New York 10019
Telephone: (212) 980-7431
Facsimile: (212) 980-7499
E-mail: RKessler@RobinsKaplan.com

*Attorneys for Plaintiffs Darrell T. Byers and Judy Byers*